UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 31, 2021

LETTER TO COUNSEL

    RE:   *Daniel U. v. Saul*
            Civil No. DLB-19-2889

Dear Counsel:

On October 1, 2019, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 9 ("Pl.'s Mot."); ECF 11 ("Def.'s Mot."). I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed his claims for benefits on September 1, 2016, and November 28, 2016 alleging an onset date of August 16, 2016. Administrative Transcript ("Tr.") 204-07, 208-31. The SSA denied his claims initially and on reconsideration. Tr. 124-27, 122, 123. An Administrative Law Judge ("ALJ") held a hearing on May 10, 2018. Tr. 31-71. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 10-30. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1-6; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

The ALJ found plaintiff severely impaired by "degenerative disc disease of the lumbar spine, carpal tunnel syndrome, neuropathy, diabetes mellitus, obesity, post-traumatic stress disorder (PTSD), depression, and anxiety disorder." Tr. 15. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can never climb ladders, ropes or scaffolds and only occasionally climb

>ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] can frequently handle and finger bilaterally. He can never work at unprotected heights and can have only occasionally (sic) exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold and extreme heat. The claimant is limited to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work) and limited to making simple work-related decisions. The claimant can have occasional contact with supervisors, coworkers and the public.

Tr. 18. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform his past relevant work as a parking enforcement officer, security guard, or armored-car guard but could perform other jobs existing in significant numbers in the national economy. Tr. 22-24. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 24-25.

On appeal, plaintiff argues the ALJ committed several errors in his RFC assessment, including by limiting plaintiff's RFC to work "not at a production rate pace (e.g. assembly line work)." Alternatively, plaintiff argues even if "e.g. assembly line work" clears the ambiguity of "production rate pace," the ALJ's exclusion of the qualifier from his hypothetical to the VE requires remand because the hypothetical inaccurately set forth plaintiff's impairments. Plaintiff additionally argues the ALJ erred in weighing his subjective complaints. Pl.'s Mot. at 3-15.

The Commissioner argues the ALJ properly accounted for plaintiff's moderate limitation in concentration, persistence, or pace in the RFC determination. As to the mismatched hypothetical, the Commissioner argues the hypothetical to the VE was adequate in light of the "clarification" sought by the ALJ as to one of the jobs purportedly available to plaintiff. Alternatively, the Commissioner argues any error was harmless. Finally, the Commissioner argues the ALJ properly evaluated plaintiff's subjective complaints. Def.'s Mot. at 5-8.

I agree with plaintiff. Because the ALJ's hypothetical to the VE did not fairly set out plaintiff's pace limitations, I remand. In so holding, I express no opinion as to plaintiff's ultimate entitlement to benefits.

Courts assessing agency decisions for substantial evidence look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual *determinations*." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted) (emphasis added). Thus, agency conclusions, stated in terms cognizable to the Court, necessarily precede proper substantial evidence review. In *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), the Fourth Circuit held an ALJ's RFC assessment limiting the plaintiff to work "requiring a production rate or demand pace" precluded review because the Court lacked "enough information to understand what those terms mean[t]." Expressing no opinion as to whether the RFC findings were correct, the Court remanded for "a clearer window into" the ALJ's reasoning. *Id.* at n.5 ("Without further explanation, we simply cannot tell whether the RFC finding…properly accounts for [the plaintiff's] moderate limitations in concentration, persistence, or pace. On remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus…and stay on task at a sustained rate."). Further, while in *Thomas* the ALJ's

*Daniel U. v. Saul*
Civil No. DLB-19-2889
March 31, 2021
Page 3

utilization of the ambiguous term constituted one among many reasons the court remanded, the Fourth Circuit subsequently remanded solely for an ALJ's failure to define similar ambiguous terms in the RFC determination. *See, e.g.*, *Perry v. Berryhill*, 765 F. App'x 869, 873 (4th Cir. 2019).

Relatedly, "[i]n order for a [VE's] opinion to be relevant or helpful,…it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). Moreover, though an ALJ possesses "great latitude in posing hypothetical questions" to the VE, substantial evidence must support all such questions. *Koonce v. Apfel*, 166 F.3d 1209, *5 (4th Cir. 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)) (per curiam).

The facts of this case necessitate an accurate account of plaintiff's argument, the hearing, and the ALJ's decision. With respect to the *Thomas* error, plaintiff specifically attacks the ALJ's RFC assessment. Pl.'s Mot. at 3-13. Plaintiff argues the ALJ's failure to explain the term "not at a production rate pace" precludes judicial review. *Id.* at 11. Plaintiff acknowledges the ALJ qualified "not at a production rate pace" with "e.g. assembly line work," but insists the qualifier did not cure the *Thomas* error, citing decisions that appear to support his position. *Id.* at 7-13 (citations omitted). The Commissioner offers some caselaw suggesting the qualifier "e.g. assembly line work" may provide the contextual prerequisite to meaningful judicial review. Def.'s Mot. at 6 (citations omitted). This Court, on at least one occasion, affirmed an ALJ's decision in part because the ALJ qualified "work that would require fast-productivity goals" with "like assembly-line work." *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642 (D. Md. Nov. 13, 2019). Assuming without deciding "e.g. assembly line work" adequately explains "not at a production rate pace," I focus my analysis on the ALJ's exclusion of the explanation from his hypothetical to the VE and whether that abridged hypothetical fairly apprised the VE of plaintiff's limitations. The Fourth Circuit's holdings in *Thomas* and *Perry* are relevant to the extent they confirm terms, analogous to the one used here, are not self-explanatory, common enough for the Court to know what they mean, or defined by the regulations or the Dictionary of Occupational Titles. *Thomas*, 916 F.3d at 312 (considering "production rate or demand pace"); *Perry*, 765 F. App'x at 872 (considering "non-production oriented work setting").

The RFC determination in the ALJ's decision indicated plaintiff could engage in "simple, routine and repetitive tasks but not at a production rate pace" and qualified "production rate pace" with "(e.g. assembly line work)." Tr. 18. Yet, the hypothetical to the VE contained no such qualification. The ALJ merely asked the VE to assume the hypothetical individual was limited "to perform[ing] simple, routine and repetitive tasks, but not at a production-rate pace,…[and making] simple work-related decisions, and then [could] have occasional contact with supervisors, coworkers and the public." Tr. 61. The Commissioner argues a subsequent exchange between the ALJ and the VE cured the ALJ's omission of "e.g. assembly line work" from his initial hypothetical. Def.'s Mot. at 7. The exchange includes the words "assembly line" but far from establishes the VE's clarity on the issue:

[ALJ]: Okay. Hey, what – and what does a Lens Block Gauger do?

*Daniel U. v. Saul*
Civil No. DLB-19-2889
March 31, 2021
Page 4

> [VE]: A Lens Block Gauger? Let's see. Let me look at this again. The individual examines blocks of lens to determine whether the lens blanks are positioned evenly on block, using a template. And then positions – okay. Positions template over blocked lens blank, and holds the assembly against light and examines assembly to determine presence of light between blank and template, indicating uneven positioning of lens blank of the block.
> [ALJ]: Okay. So – all right. Is that like an assembly line type of thing, or is it – do you know if it's not on a – like a production rate or not, or –
> [VE]: I'm not sure. It doesn't say. Just that the person walks with – walking – this is with optical goods.
> [ALJ]: Okay. Hey, so is there another job that you could give me besides that one, since it sounds like there might be some – is –
> [VE]: Some *contact*?
> [ALJ]: [Are] there any others, or is that – are we just –
> [VE]: For sedentary? Yes, Your Honor, I can look for another one.

Tr. 62-3 (emphasis added).

This exchange evidences two problematic facts. First, the VE manifested uncertainty as to whether the job she identified required "a production rate or not." Whether the ambiguous term itself caused the uncertainty is unclear, but the uncertainty nonetheless casts doubt on the VE's comprehension of the hypothetical in the first instance. Second, the VE's subsequent comment demonstrates the ALJ's point of clarification did not resolve her confusion. Rather than speak to the pace required by the position, the VE interpreted the ALJ's discomfort with relying on the lens block gauger position as based on the potential "contact" in the position. Notably, the ALJ limited the hypothetical individual to work requiring only "occasional contact with supervisors [and] coworkers…." Tr. 61. The VE's attunement to contact was therefore relevant on the whole but simply not the substance of the ALJ's concern about a "production rate pace." I therefore disagree with the Commissioner that the above exchange between the ALJ and VE demonstrates that the hypothetical fairly apprised the VE of plaintiff's pace limitations.

The ALJ concluded plaintiff is moderately limited in concentration, persistence, or pace. Tr. 17. Further, the ALJ concluded plaintiff's moderate limitation required some sort of pace accommodation in the RFC determination. *See* Tr. 18. The ALJ attempted to communicate that pace accommodation in the hypothetical to the VE by stating that the hypothetical individual was limited to work "not at a production rate pace." Tr. 61. It is clear on these particular facts that the VE did not comprehend that limitation because she was "not sure" if a job she identified was "an assembly line type of thing" or required "a production rate or not." Tr. 63. Accordingly, I find that, on these specific facts, the ALJ's hypothetical did not fairly set out all of plaintiff's limitations. *See Hines*, 453 F.3d at 566.

The Commissioner alternatively argues the error is harmless, pointing out plaintiff's failure to "argue that the three jobs relied on by the ALJ to support his step-five finding would involve assembly line work." Def.'s Mot. at 7. I am unpersuaded. First, the Commissioner mistakes the significance of the ALJ's qualification of "production rate pace" with "(e.g. assembly line work)."

*See* Tr. 18. Though certainly it follows from the ALJ's RFC determination that plaintiff's impairments precluded work on an assembly line, the qualification by way of example leaves open—in fact, suggests—the existence of different work with similar production requirements outside plaintiff's capabilities. Thus, proving harmful error does not require plaintiff demonstrate each identified job actually involved work on an assembly line. Rather, plaintiff could argue each identified job required a pace outside his capabilities, such as exists on an assembly line, given his moderate CPP limitation.

Second, I disagree that an ALJ's flawed hypothetical and consequent failure to support his step-five determination with substantial evidence is harmless. The ALJ carries the burden at step five of proving work within plaintiff's capabilities existing in significant numbers. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3). If an ALJ cannot prove the existence of such work, a finding of disability is appropriate. Without substantial evidence in the record establishing plaintiff could engage in such work, remand is therefore necessary. *See Patterson v. Comm'r, Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017) ("Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error.") (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011)).

In sum, I agree with plaintiff that the ALJ did not fairly set out all his impairments in the hypothetical to the VE by omitting the qualifier "e.g. assembly line work." The subsequent exchange with the VE in which "assembly line work" was mentioned did not cure the deficiency. The ALJ "did not ask questions that ensured the vocational expert knew what [plaintiff's] abilities and limitations were. Therefore, [the VE's] answers to those questions were not particularly useful." *Walker*, 889 F.2d at *57. Because the ALJ's step-five finding lacks any "relevant or helpful" testimony from the VE, substantial evidence does not support his step-five determination. *See id.*; *see also Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2019) ("…[W]e cannot determine whether the hypothetical questions posed to the VE included all of Monroe's functional limitations, as they needed to do in order to be useful.").

Because I remand for the ALJ's legally insufficient hypothetical, I decline to reach plaintiff's arguments as to the ALJ's RFC assessment and assessment of plaintiff's subjective complaints. The ALJ may consider these arguments on remand.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 9, is denied, and the Commissioner's motion for summary judgment, ECF 11, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

*Daniel U. v. Saul*
Civil No. DLB-19-2889
March 31, 2021
Page 6

      Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

      Sincerely yours,

      /s/

      Deborah L. Boardman
      United States Magistrate Judge